BOARD OF EDUCATION OF HAMILTON COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 10, HAMILTON COUNTY, Plaintiff-Appellant, *v.* REGIONAL BOARD OF SCHOOL TRUSTEES OF JEFFERSON AND HAMILTON COUNTIES *et al.*, Defendants-Appellees.

Fifth District   No. 83—128

Opinion filed February 8, 1984.

Allen D. Schwartz and David R. Smith, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellant.

James W. Sanders and Associates, of Marion, for appellees.

Neil F. Hartigan, Attorney General, of Springfield (Julia Quinn Dempsey, Special Assistant Attorney General, of counsel), for *amicus curiae*.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

This appeal is taken from the dismissal by the circuit court of Jefferson County of the plaintiff school board's complaint to enjoin defendants, regional boards of school trustees, from holding hearings on a petition to establish several new school districts. We hold that the complaint sufficiently alleged that extrajurisdictional action by the regional boards was threatened, and therefore the court erred in dismissing the complaint for injunctive relief.

On July 12, 1982, a petition was filed with the Regional Board of School Trustees of Jefferson and Hamilton counties and the Regional Board of School Trustees of Franklin County. The petitioners were the majority of legal voters in Hamilton County Community Unit School District No. 10 (District 10) and were represented by a committee of 10 petitioners as attorney in fact. (Ill. Rev. Stat. 1981, ch. 122, par. 7—6.) By this petition, it was requested that district 10 be divided into three separate districts, one high school district and two elementary school districts. District 10 currently consists primarily of land in Hamilton County, with some territory in Jefferson and Franklin counties.

The regional board for Hamilton and Jefferson counties scheduled a hearing on the petition for October 6, 1982. This hearing has apparently been held in abeyance pending resolution of these proceedings. On September 22, 1982, the board of education of District 10 filed a complaint to enjoin the regional boards for Hamilton, Jefferson and Franklin counties from holding a hearing on the petition or taking any other action upon it. District 10's position is that the regional boards do not have the authority to grant the relief requested in the petition. It points to several sections of the School Code to support its argument. Section 12—9 of the Code states, "All high school districts shall be governed by the provisions of this Act for the operation of a

community high school district." (Ill. Rev. Stat. 1981, ch. 122, par. 12—9.) Section 12—1 of the Code was amended in 1965 to provide that "[n]o petition for the establishment of a community high school district may be filed" after the effective date of the amendment. (Ill. Rev. Stat. 1981, ch. 122, par. 12—1.) Reasoning from those two provisions, District 10 concludes that no new high school district may be created in Illinois after 1965, and since the petition seeks the creation of a new high school district, it should not be heard by the regional boards. *Amicus curiae* Dr. Donald G. Gill, State Superintendent of Education, has filed a brief in this court in which he agrees with District 10's interpretation of these provisions.

The petitioners' committee of 10, who intervened in the proceedings below, asserted, *inter alia*, that District 10's resort to the courts was premature. The intervenors moved to dismiss with prejudice the complaint for injunctive relief. Following a nonevidentiary hearing, the court orally granted this motion, and it is this ruling which District 10 now assigns as error.

■ Normally, a party aggrieved by administrative action cannot seek relief in the courts without first pursuing all administrative remedies available to him. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 359 N.E.2d 113.) District 10 maintains that this doctrine should not be applied in this case. It notes that the doctrine of exhaustion of administrative remedies "applies to any question of law or fact except those going to the jurisdiction of the agency over the subject matter or the person" (*Head-On Collision Line, Inc. v. Kirk* (1976), 36 Ill. App. 3d 263, 266, 343 N.E.2d 534, 537), but it states that, under its interpretation of the provisions of the School Code quoted above, the regional boards do not have jurisdiction to consider the petition. Assuming, *arguendo*, that the petition did not meet the requirements of the School Code, then District 10 may resort to the courts without taking action before the regional boards if a petition not authorized by the Code is a jurisdictional defect. We believe that it is.

■ ■ In hearing a petition to change the boundaries or organization of school districts, a school board must act in conformity with the School Code. (*Ottawa Township High School District No. 140 v. County Board of School Trustees* (1969), 106 Ill. App. 2d 439, 246 N.E.2d 138.) The board has the authority only to grant the relief sought in the petition or to deny it. (See *School District No. 79 v. County Board of School Trustees* (1954), 4 Ill. 2d 533, 123 N.E.2d 475.) Therefore, if a school board hears or otherwise takes action on a petition which does not comply with the Code, it exceeds its statuto-

rily granted jurisdiction. (See *Streator Township High School District No. 40 v. County Board of School Trustees* (1957), 14 Ill. App. 2d 251, 144 N.E.2d 531.) District 10's complaint alleges in essence that a school board may not entertain a petition for the creation of a high school district, and that the instant petition seeks that relief. These allegations show that the injunction sought by District 10 would have the effect of preventing the regional boards from acting beyond the limits of their authority under the School Code. As such, further proceedings before the boards are not a prerequisite to that relief, and District 10's complaint was properly before the circuit court.

Upon examining the merits of that complaint, we find that the School Code no longer allows voters to petition for the creation of a new high school district. Before 1965, the Code permitted voters in certain described territory to petition for an election to establish a community high school district. (Ill. Rev. Stat. 1963, ch. 122, par. 12—1.) The language of the Code permitting this procedure did not specifically limit the establishment of community high school districts to territory which was not part of an existing district. As a result, it was held in *People ex rel. Petty v. Community High School District No. 128* (1964), 50 Ill. App. 2d 445, 200 N.E.2d 609, that a community high school district could be created from territory already included in another high school district. It does not appear that the reviewing courts were presented with the question of whether a community high school district could be established in territory belonging to a community unit school district.

Section 12—1 of the Code was amended, as effective July 1, 1965. The required procedure for establishing a community high school district was not altered, but the following language, as we have noted earlier, was added to this provision: "No petition for the establishment of a community high school district may be filed after the effective date of this amendatory Act of 1965." (Ill. Rev. Stat. 1981, ch. 122, par. 12—1.) This amendment, according to District 10, effectively prohibits the initiation of proceedings to establish any new high school district in Illinois after 1965, especially when the amendment is read with section 12—9 of the Code, which states that all high school districts are to be governed by the laws pertaining to community high school districts.

The intervenors respond that this construction of section 12—1 would render it internally inconsistent. They argue that it does not make sense to retain the procedure to initiate a referendum on a community high school district while at the same time preventing voters from filing a petition to commence those proceedings. This section of

the Code may seem to be contradictory when read nearly 20 years after its amendment, but the retention of the pre-amendment portions of section 12—1 served a purpose just after the effective date of the amendment. Even though no new petition to establish a community high school district could be filed after July 1, 1965, the procedure governing referenda would still apply to proceedings occurring after July 1, 1965, on petitions filed before that date. A more logical statement of the intervenors' position is that if the General Assembly had intended to prohibit the formation of all new high school districts, it would have deleted the referendum provisions of section 12—1 some time between 1965 and the present. It would have also modified section 7—2 of the Code (Ill. Rev. Stat. 1981, ch. 122, par. 7—2), under which the instant petition is filed, to read, "New school districts *** may be created except high school districts." That section presently states, "New school districts *** may be created" and does not list exceptions.

■■ ■ The first duty of a court in construing a statute is, of course, to effectuate the intention of the legislature. (*People v. Robinson* (1982), 89 Ill. 2d 469, 433 N.E.2d 674.) The best indication of that intent is the language which the legislators voted to adopt. (*Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 374 N.E.2d 211.) The action taken by drafters of legislation is a more definite expression of their thoughts than is their failure to act. Here, in opposition to the plain language of the 1965 amendment, the intervenors posit only inferences drawn from the General Assembly's lack of activity in amending other portions of the School Code. We will not read this inaction to defeat the 1965 amendment of section 12—1, especially because the retention of the remainder of that section is explained by the necessity for rules on pending petitions. If no petition to establish a community high school district may be filed after July 1, 1965, and if all high school districts must be governed by the laws which control the operation of a community high school district, then it follows that no petition to establish any new high school district may be filed in Illinois after July 1, 1965.

This conclusion is bolstered by reasons other than the language of the Code itself. Over the last four decades, the General Assembly has enacted legislation to promote larger, economically sound school districts so as to better the State's educational facilities. The courts have consistently recognized in that legislation an expression of public policy to that effect. (*Joliet Township High School District No. 204 v. Regional Board of School Trustees* (1979), 72 Ill. App. 3d 430, 391 N.E.2d 147; *Community Consolidated School District No. 210 v. Mini*

(1973), 55 Ill. 2d 382, 389, 304 N.E.2d 75 (Goldenhersh, J., dissenting), *appeal dismissed* (1974), 416 U.S. 923, 40 L. Ed. 2d 279, 94 S. Ct. 1921; *Boughton v. Shears* (1961), 29 Ill. App. 2d 216, 172 N.E.2d 497; *People v. Newman Community Unit School District No. 303* (1953), 1 Ill. 2d 370, 115 N.E.2d 606.) Obviously, prohibiting the creation of new high school districts advances that policy by preventing the fragmentation of existing districts.

Furthermore, the Office of the Legal Advisor of the Superintendent of Public Instruction, now the Office of the Legal Advisor of the State Board of Education, has construed the School Code in a similar manner. Pursuant to section 2—3.7 of the Code (Ill. Rev. Stat. 1981, ch. 122, par. 2—3.7), that office is authorized to give written advisory opinions on questions of school law. (See *Board of Education v. Bakalis* (1973), 54 Ill. 2d 448, 299 N.E.2d 737.) Appended to the *amicus curiae* brief are two such letter opinions, addressed to local school authorities. In the first of these letters, dated March 13, 1974, an attorney in the office concluded that no petition for the establishment of a new community high school district could be filed after the effective date of the 1965 amendment. In the second letter, dated January 28, 1975, the same attorney wrote that he was of the opinion "that new high school districts may not be legally formed under the Illinois School Code at this time." Copies of these opinions, according to *amicus curiae*, are made available to local school officers who pose a question on that issue, where it is determined that an additional opinion is unnecessary or unsuitable. *Amicus curiae* also notes that no high school district has been created in Illinois since 1965, demonstrating the acceptance of the legal advisor's position by the educational community.

The intervenors minimize the significance of these opinions. They observe that the opinions were not rendered as quasi-judicial or quasi-legislative acts, and therefore should not be accorded great weight. Nonetheless, the supreme court has explained that statutory interpretations by administrative agencies are an informed source for ascertaining legislative intent (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 348 N.E.2d 161), even if not reached by trial in adversary form (*Oscar L. Paris Co. v. Lyons* (1956), 8 Ill. 2d 590, 134 N.E.2d 755). As a result, even if we accept the intervenors' contention that the two letter opinions do not form a "long standing interpretation," the position of the legal advisor is, if not binding on us, at least persuasive. *Hardway v. Board of Education* (1971), 1 Ill. App. 3d 298, 274 N.E.2d 213.

Finally, the intervenors insist that this construction of the statute

does not bar the regional boards from hearing their petition. They state that no new high school district would be created if their petition were granted, but instead the existing district, District 10, would be merely "redefined." The high school would be the same attendance center if the reorganization were allowed, the same geographical area would be served by the school, and the families and students would be the same, as would the teachers and administrators. As the intervenors express it in their brief, "The number of the district to which the high school belongs may change but all else will remain constant."

This argument is specious. Section 12—1 of the Code, as we have interpreted it, prohibits the filing of a petition to establish any new high school district. It makes no exception for districts which could be fashioned with existing facilities. The point is that the instant petition seeks the creation of a new legal entity, a high school district, which does not now exist. As such, it is beyond the authority of the regional boards to consider the petition.

For the aforesaid reasons, the circuit court of Jefferson County erred in dismissing the plaintiff's complaint for injunctive relief. Accordingly, that complaint is reinstated and this cause is remanded for further proceedings consistent with our opinion.

Reversed and remanded.

KARNS and KASSERMAN, JJ., concur.